J-S68042-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DERRICK EDMUNDS | |
| Appellee | No. 189 EDA 2015 |

Appeal from the PCRA Order December 17, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000066-2007
CP-51-CR-0801971-2006

BEFORE:  BENDER, P.J.E., DONOHUE, J., and MUNDY, J.

MEMORANDUM BY MUNDY, J.:                    **FILED DECEMBER 01, 2015**

The Commonwealth appeals from the December 17, 2014 order granting the petition for relief, filed by Appellee, Derrick Edmunds, pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we vacate and remand.

A prior panel of this Court set forth the facts and procedural history of Appellee's underlying conviction as follows.

> [Appellee] appeals from the December 15, 2008 judgment of sentence of life imprisonment, plus a consecutive term of 12 to 24 years' imprisonment, imposed after a jury found him guilty of first-degree murder, attempted murder, conspiracy to commit murder, aggravated assault, possessing an instrument of crime (PIC), and violating the Uniform Firearms Act (VUFA).[1]  The charges arose after it was alleged that [Appellee] and co-defendant Eric Bundy opened fire on a parked vehicle in which victims Jason Bryan and Kevin

Robertson were seated[, case number 66-2007]; [Appellee] was also charged with shooting victim Michael Ferrell one month later[, case number 801971-2006]. …

On April 7, 2006, at approximately 10:45pm, Jason Bryan (victim/decedent) and his cousin Kevin Robertson drove to the 100 block of N. 60th Street in the City and County of Philadelphia to meet Kevin's girlfriend Samara Dennis. Robertson double-parked his cousin's silver Cadillac near Samara's house. Samara, who had been dating Robertson for about two (2) months, walked over to the car and got into the back seat.[2] After a few minutes, Samara exited the car and began to walk to her house, where her brother and Samara's daughter were waiting for her.

Robertson began to pull away as Eric Bundy started to run up to the driver's side door while pulling a firearm from his waistband. Robertson saw Bundy approach in the rearview mirror, pulled out his firearm, and while hanging out of the driver's side window shouted, "I've got something too!" Bundy stepped back, and gestured with one hand that he was backing away, while sliding the firearm back into his waistband. At the same time as Bundy backed away from the car, [Appellee] approached the passenger side and began firing into the car. Robertson quickly ducked back into the car and pulled away. Bundy began firing at the car as it drove off. Neighbors at the block party quickly fled the area.

Robertson drove approximately eight (8) blocks to 61st and Landsdowne Streets and parked. Robertson noticed that he was shot in the right hand and arm, and felt a pain in his head. Bryan was slumped forward in his seat and unresponsive as Robertson called out to him. Robertson pulled Bryan's body back into

the seat and noticed two (2) bullet wounds to his head. He called 911. As police arrived and approached the car, the driver's side door was open and the engine was running. Robertson staggered over to the police in a blood soaked shirt and was transported to the hospital for treatment. Bryan was pronounced dead at the scene. He sustained two (2) fatal gunshot wounds to the head.

An investigation of the Cadillac revealed that the rear window had a bullet hole in it, which caused the window to shatter, and there were five (5) bullet holes in the front passenger side door. Seven (7) fragments of ballistic evidence were discovered inside the car. It was determined that all of the shots were fired *into* the vehicle at the scene of the shooting. Eight (8) .45 caliber fired cartridge casings ("FCC") were found on the street at the scene of the shooting. The casings matched the ballistic evidence extracted from the decedent's body. The FCC's and the bullets were all fired from the same .45 caliber weapon.

On May 3, 2006, approximately four (4) weeks following the murder of Jason Bryan, Eric Bundy, was walking with Michael Ferrell ("Ferrell") on the 200 block of South Frazier Street, to meet [Appellee]. Bundy saw an undercover police car on the street and placed "something" into his front waistband. As the detectives approached and identified themselves, the group, including [Appellee] dispersed and ran down the street. Detectives heard a single gunshot and followed the sound. [Appellee] was found hiding in the back seat of a parked vehicle with a Glock 17, nine millimeter under the passenger seat. The rear passenger window of the car was shot out. Ferrell was standing next to the vehicle with a gunshot wound to his face. [Appellee] was arrested at the scene for the May 3rd shooting. The handgun recovered from [Appellee] on

May 3rd matched the ballistic evidence from the April 7th shooting, and was in fact the weapon which killed Jason Bryan.

When confronted with the ballistics evidence, [Appellee] provided a full statement to police detailing his involvement in the murder of Jason Bryan.

[2] Kevin was driving and Jason was in the passenger seat.

Trial Court Opinion, 8/6/09, at 2-4 (footnote and citations omitted; emphasis in original).

[Appellee] was arrested and charged in connection with both the April 7, 2006 and May 3, 2006 shootings. During an interview with police, he implicated co-defendant Eric Bundy in the murder of Jason Bryan. [Appellee] and Bundy were tried together before a jury, and [Appellee] was found guilty of the first-degree murder of Jason Bryan, as well as the attempted murder and aggravated assault of Kevin Robertson and the aggravated assault of Michael Ferrell.

[Appellee] was sentenced on December 15, 2008, and his post-sentence motions were denied on January 22, 2009. A timely notice of appeal was filed on February 3, 2009[.]

---

[1] 18 Pa.C.S.A §§ 2502(a), 905, 901, 2702, 907 and 6106(a)(1), respectively.

*Commonwealth v. Edmunds*, 998 A.2d 1011 (Pa. Super. 2010), (unpublished memorandum at 1-4) (footnote omitted), *appeal denied*, 9 A.3d 627 (Pa. 2010). On April 16, 2010, this Court affirmed Appellee's

judgment of sentence in the Bryan matter, case 66-2007.[1] *Id.* at 26. The Pennsylvania Supreme Court denied Appellee's petition for allowance of appeal on October 20, 2010. *Id.* Appellee did not file a petition for a writ of *certiorari* with the United States Supreme Court, and accordingly, his judgment of sentence became final on January 18, 2011, when the time for filing such a petition expired. *See generally* 42 Pa.C.S.A. § 9545(b)(3); U.S. S. Ct. R. 13(1).[2]

On June 13, 2011, Appellee filed a timely *pro se* PCRA petition, and the PCRA court appointed counsel. On March 15, 2014, Appellee's counsel

_____

[1] As noted above, Appellee was charged in two cases, which were consolidated for trial, but proceeded on separate appellate tracks. Appellee filed a single post-sentence motion as to both cases. The trial court order denying the post-sentence motion contained only docket number 66-2007, relating to the Bryan shooting. Further, Appellee's notice of appeal purported to appeal only docket number 66-2007. Therefore, this Court affirmed the judgment of sentence in docket number 66-2007 only.

[2] On November 24, 2009, Appellee filed a PCRA petition in docket number 801971-2006. On March 25, 2010, the PCRA court granted relief in the form of reinstatement of Appellee's appellate rights *nunc pro tunc*, and Appellee filed a timely notice of appeal to this Court. On February 23, 2012, this Court affirmed Appellee's judgment of sentence, and our Supreme Court denied Appellee's petition for allowance of appeal on December 27, 2012. **Commonwealth v. Edmunds**, 46 A.3d 824 (Pa. Super. 2012) (unpublished judgment order), *appeal denied*, 60 A.3d 534 (Pa. 2012). Appellee did not file a petition for a writ of *certiorari* with the United States Supreme Court, and accordingly, his judgment of sentence in docket number 801971-2006 became final on March 27, 2013. *See generally* 42 Pa.C.S.A. § 9545(b)(3); U.S. S. Ct. R. 13(1).

filed an amended petition.[3]  On December 17, 2014, the PCRA court granted the petition based on trial counsel's failure to request a "no adverse inference" charge.[4]  On January 8, 2015, the Commonwealth filed a timely notice of appeal.[5]

The Commonwealth presents the following issue for our review.

> Did the PCRA court err in granting a new trial on the basis of trial counsel's failure to request a "no adverse inference" instruction in the absence of actual prejudice?

Commonwealth's Brief at 6.

---

[3] Appellee's current *pro se* PCRA petition, which sought relief on both docket numbers, was prematurely filed as to docket number 801971-2006 because his judgment of sentence did not become final until March 27, 2013.  While the trial court did not have jurisdiction to address the prematurely filed *pro se* PCRA petition as to docket number 801971-2006, Appellee's appointed counsel filed an amended PCRA petition on March 15, 2014 as to both of Appellee's cases within one year of Appellee's judgment of sentence in docket number 801971-2006 becoming final.  Accordingly, we will treat the amended petition as a timely first PCRA petition in docket number 801971-2006.

[4] Appellee included an ineffectiveness of counsel claim in his amended PCRA petition, based on counsel's failure to preserve a weight of the evidence claim for direct appeal.  The PCRA court's order did not explicitly deny Appellee's petition on that ground.  However, at the PCRA hearing, the PCRA court stated it "agree[d] with the Commonwealth's assertion that as to the weight of the evidence it's clear that that argument is denied."  N.T., 12/17/14, at 3.

[5] On January 8, 2015, the Commonwealth also filed a statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).  The PCRA court filed its Rule 1925(a) opinion on April 2, 2015.

Our standard of review requires us to "examine whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014) (internal quotation marks and citation omitted). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (citation omitted). "It is well-settled that a PCRA court's credibility determinations are binding upon an appellate court so long as they are supported by the record." *Commonwealth v. Robinson*, 82 A.3d 998, 1013 (Pa. 2013) (citation omitted). However, this Court reviews the PCRA court's legal conclusions *de novo*. *Commonwealth v. Rigg*, 84 A.3d 1080, 1084 (Pa. Super. 2014) (citation omitted).

Further, in order to be eligible for PCRA relief, a petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at Section 9543(a)(2) of the PCRA. 42 Pa.C.S.A. § 9543(a)(2). These errors include ineffectiveness of counsel. *Id.* § 9543(a)(2)(ii). The issues raised in a PCRA petition must be neither previously litigated nor waived. *Id.* § 9543(a)(3).

When reviewing a claim of ineffectiveness, we apply the following test, first articulated by our Supreme Court in *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987).

> [C]ourts presume that counsel was effective, and place upon the appellant the burden of proving

otherwise. Counsel cannot be found ineffective for failure to assert a baseless claim.

To succeed on a claim that counsel was ineffective, Appellant must demonstrate that: (1) the claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's ineffectiveness prejudiced him.

…

[T]o demonstrate prejudice, appellant must show there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different.

*Commonwealth v. Michaud*, 70 A.3d 862, 867 (Pa. Super. 2013) (internal quotation marks and citations omitted). "Failure to establish any prong of the test will defeat an ineffectiveness claim." *Commonwealth v. Birdsong*, 24 A.3d 319, 329 (Pa. 2011).

The PCRA court found that trial counsel misinterpreted the law regarding the "no adverse inference" jury instruction. PCRA Court Opinion, 4/2/15, at 11. The PCRA court further concluded that the trial court's instruction was *per se* prejudicial because it apprised the jury that they could make no adverse inference from Appellee's co-defendant's silence while implying that Appellee was not entitled to that same inference. *Id.* at 8. The PCRA court explained Appellee was entitled to a new trial because "the trial court's improper charge prejudiced the [Appellee] by encroaching on his constitutional rights [against self-incrimination]." *Id.* at 10. In this appeal, the Commonwealth contends that the PCRA court misapplied the *Pierce* test

because "the PCRA court granted [Appellee] a new trial solely on its finding that trial counsel unprofessionally failed to request a jury instruction, without any analysis of whether correcting that error would likely have led to an acquittal." Commonwealth's Brief at 16.

We begin our analysis by noting "[a] no-adverse-inference instruction directs the jurors that they may not draw any derogatory insinuation from a defendant's failure to testify on his own defense, because the defendant has the unqualified right not to take the stand if he so chooses." *Commonwealth v. Perez*, 103 A.3d 344, 348 (Pa. Super. 2014) (citation omitted), *appeal denied*, 116 A.3d 604 (Pa. 2015). A defendant is entitled to such an instruction under both the Fifth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania constitution. *Commonwealth v. Khamphouseane*, 642 A.2d 490, 497 (Pa. Super. 1994), *appeal denied*, 649 A.2d 669 (Pa. 1994). Our Supreme Court has held that a trial court must give the "no adverse inference" instruction unless the defendant expressly waives his right to the instruction in an on-the-record colloquy. *Commonwealth v. Thompson*, 674 A.2d 217, 221 (Pa. 1996).

In this case, Appellee was tried with a co-defendant. Appellee's trial counsel stated that Appellee had waived his right to the "no adverse inference" instruction as follows.

> [Trial Court]: Alright. [Appellee], you too have the
> same right as Mr. Bundy[, the co-defendant,] to

have the ["no adverse inference"] instruction where I tell the jury that you have the right to remain silent and you chose to do that and they should not think badly of you for choosing that. Do you want that instruction?

[Trial Counsel]: Judge[,] if I may intervene, my position on this respectfully is that he did waive his right by giving a statement[, in the form of a confession to the police,] so I would ask that the instruction not be given.

[Trial Court]: I won't give it on his behalf if that's your interpretation.

[Trial Counsel]: That's my interpretation.

[The Court]: Very good. So I will not give it on your behalf. Alright?

[Appellee]: Okay.

N.T., 11/24/08, at 236-237. When charging the jury, the trial court gave the following "no adverse inference" instruction.

Now, ladies and gentlemen, a citizen who is accused of a crime has absolutely no obligation to present evidence or to testify or to do anything in their own defense but when a citizen chooses to present evidence, you have the obligation to consider that evidence and to weigh it in your assessment as to whether the Commonwealth has met its burden.

Ladies and gentlemen, part and parcel and consistent with this presumption of innocence is the right to remain silent. Now, Eric Bundy chose to remain silent. It is his absolute constitutional right to remain silent. You must not draw any inference of guilt or any other inference that is negative to Derrick—Eric Bundy, forgive me, I apologize. This instruction is applicable to Eric Bundy only. It is entirely up to him to decide whether to testify or not. He chose not to testify. You must not draw any

> inference negative to him because he chose not to
> testify in this proceeding.

N.T., 11/25/08, at 143-144.

Thus, from the record, it is apparent that the basis for Appellee's waiver of the "no adverse inference" instruction was trial counsel's faulty advice that Appellee had waived the instruction by giving a pre-trial, out-of-court statement to the police. Our Supreme Court has held that trial counsel's failure to request a "no adverse inference" instruction is not *per se* ineffectiveness. **Commonwealth v. Howard**, 645 A.2d 1300, 1308 (Pa. 1994). Further, because the failure to request a "no adverse inference" instruction is not prejudicial *per se*, the waiver of that instruction on improper grounds also cannot constitute prejudice *per se*. **See Perez**, **supra** at 349. Therefore, even if the PCRA court was correct that this claim has arguable merit, we must proceed to determine whether trial counsel's alleged error prejudiced Appellee. **See Thompson**, **supra** at 221 (reasoning that counsel will not be deemed ineffective for failing to request the "no adverse inference" instruction or for failing to conduct a colloquy specifically waiving the instruction unless there is a showing of prejudice). The PCRA court erred by concluding Appellee was *per se* prejudiced by trial counsel's deficient advice and the trial court's subsequent instruction.

Accordingly, we must proceed to determine whether trial counsel's error prejudiced Appellee. We conclude that Appellee was not prejudiced because the Commonwealth presented overwhelming evidence of Appellee's

guilt. Appellee confessed to shooting at individuals inside Bryan's vehicle. N.T., 11/24/08, at 72-83. Further, Appellee was arrested in connection with the accidental shooting of Ferrell less than a month later. N.T., 11/19/08, at 99-100. Ferrell identified Appellee as the one who dropped the gun that accidentally discharged and grazed his face. *Id.* at 100. Ballistics evidence proved that the fatal shots in the Bryan shooting were fired from the gun in Appellee's possession when he was arrested for the shooting of Ferrell. N.T., 11/21/08, at 168. Moreover, this Court determined in Appellee's direct appeal that said evidence was sufficient to establish Appellee's specific intent to kill. *See Edmunds*, *supra* at 22. In light of this evidence, we conclude that even if the trial court gave a "no adverse inference" instruction as to Appellee, there is no reasonable probability that the outcome of Appellee's trial would have been different. *Accord Perez*, *supra* at 349-350. Because Appellee cannot show prejudice, trial counsel's improper waiver of the "no adverse inference" instruction cannot be deemed ineffective. *See Birdsong*, *supra*.

Based on the foregoing, we conclude that the PCRA court erred as a matter of law by granting Appellee a new trial based on trial counsel's ineffectiveness. *See Fears*, *supra*. However, because the PCRA court's order did not expressly dispose of Appellee's alternate ground for relief, we vacate the PCRA court's December 17, 2014 order and remand with instructions to the PCRA court to dispose of Appellee's remaining claim.

Order vacated.  Remanded with instructions.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/1/2015</u>