J-S13012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| BRANDON WILLIAM GROVER | : | |
| | : | |
| Appellee | : | No. 1251 WDA 2017 |

Appeal from the PCRA Order August 10, 2017
In the Court of Common Pleas of Potter County
Criminal Division at No(s):  CP-53-CR-0000047-2013

BEFORE:  GANTMAN, P.J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:              **FILED JANUARY 07, 2019**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Potter County Court of Common Pleas, which granted the first petition of Appellee, Brandon William Grover, filed pursuant to the Post Conviction Relief Act ("PCRA")[1], vacated the judgment of sentence, and granted Appellee a new trial.  Based on the following reasons, we vacate and reinstate Appellant's judgment of sentence.

The relevant facts and procedural history of this case are as follows.  On August 13, 2011, Appellee and his then-girlfriend, Jessica Snyder, engaged in a physical altercation with another couple.  The Commonwealth charged Appellee on January 11, 2013, with one count each of aggravated assault,

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

simple assault, and harassment.

Appellee proceeded to a jury trial on May 8, 2014. At trial, Patrick Nelson ("Victim 1"), testified that on the night of the incident, he and his wife, Karen Nelson ("Victim 2"), visited a local bar where Appellee and Ms. Snyder were present. Victim 1 testified he and Victim 2 did not know or interact with Appellee or Ms. Snyder prior to the altercation. Victim 1 explained as he and Victim 2 exited the bar, he noticed tension among some women gathered outside. Victim 1 said he observed Ms. Snyder aggressively yelling and running towards Victim 2, which was the last detail he recalled from that evening before losing consciousness.

Victim 2 also testified at trial. Victim 2 stated she did not interact with Appellee or Ms. Snyder while inside the bar. Victim 2 said when she exited the bar, Ms. Snyder asked her, "What are you looking at?" Victim 2 responded, "Not much," and walked away from Ms. Snyder. Victim 2 testified that while walking to the car, a hard object hit the back of her head, causing her to fall to the ground. Victim 2 stated Ms. Snyder jumped on top of her and hit her in the face. Victim 2 explained while Ms. Snyder attacked her, Appellee repeatedly kicked the upper body of Victim 1, who was rendered unconscious.

Jonathan Huff, the disc jockey at the bar the night of the incident, also testified. Mr. Huff stated Appellee and Ms. Snyder walked around the bar as though they were attempting to "pick a fight." Mr. Huff notified a bartender

- 2 -

of Appellee's and Ms. Snyder's behavior, and a bar employee escorted the couple outside. Mr. Huff stated that as he was later loading his equipment into his vehicle outside the bar, he heard a bottle break, turned, and saw Victim 2 falling to the ground. Mr. Huff said he observed Victim 1 approach Victim 2 in a manner indicating that he sought to break up the altercation. Mr. Huff stated that as Victim 1 attempted to break up the fight, Appellee punched Victim 1, knocking him to the ground. Mr. Huff added Appellee then kicked Victim 1 in the head and upper torso, while Victim 1 assumed a "defensive posture."

The jury also heard testimony from Chandra Livingston, a bartender working at the bar on the night of the incident. Ms. Livingston testified she did not notice Appellee and Ms. Snyder act aggressively until Mr. Huff notified her of two "verbally aggressive" patrons. Ms. Livingston stated that after observing the couple's behavior, she had them escorted out of the bar. Ms. Livingston did not witness the physical altercation, but afterward she observed Victim 1 unconscious on the ground outside the bar.

Trooper Andrew Mincer, the responding officer, also testified. Trooper Mincer stated that when he arrived to the scene, Victims 1 and 2 were receiving medical treatment. Trooper Mincer named Appellee and Ms. Snyder as suspects after he interviewed eyewitnesses to the fight; Mr. Huff specifically identified Appellee. Trooper Mincer also stated he unsuccessfully attempted to interview Appellee, who refused to speak with the trooper. Trooper Mincer

opined Victim 1 did not use unlawful force against Appellee to justify Appellee's attack.

The jury also heard the testimony of Trooper Mark Vanvolkenburg, who concluded the investigation of the altercation. Trooper Vanvolkenburg interviewed Victims 1 and 2, reviewed their medical records from the incident, and filed charges against Appellee. Trooper Vanvolkenburg also testified regarding three of Appellee's prior criminal cases involving allegations of assaultive behavior. Trooper Vanvolkenburg was not present for the prior incidents nor did he conduct the investigations in the prior cases. Trooper Vanvolkenburg learned of the prior incidents when he reviewed the earlier case files during his investigation of the current incident.

As to the first prior case, Trooper Vanvolkenburg testified that in 2002, Appellee entered a school to seek out a student with whom Appellee had a feud. Trooper Vanvolkenburg explained Appellee refused to leave the school and threatened the staff when they asked him to leave. The Commonwealth charged Appellee with disorderly conduct, terroristic threats, criminal trespass, and harassment and stalking. Ultimately, Appellee entered a guilty plea to disorderly conduct only. After Trooper Vanvolkenburg discussed this episode, the Commonwealth introduced and the court admitted Exhibit 5. Exhibit 5 contained copies of the following documents in the Commonwealth's prosecution of Appellee for the 2002 incident: criminal complaint, criminal information, plea order, and sentencing order.

Trooper Vanvolkenburg also testified regarding a second prior conviction, which stemmed from a 2004 dispute between Appellee and his ex-girlfriend. Trooper Vanvolkenburg explained that after she had a dispute with Appellee in the car, Appellee's ex-girlfriend exited the vehicle, flagged down another vehicle, and asked that vehicle's driver to drive her away. Appellee subsequently backed into the vehicle his ex-girlfriend entered multiple times. The Commonwealth charged Appellee with two counts each of aggravated assault, simple assault, recklessly endangering another person ("REAP"), and harassment, and one count each of criminal mischief, lack of registration and title to vehicle, careless driving, and reckless driving. Trooper Vanvolkenburg explained Appellee entered a guilty plea to two counts each of simple assault and REAP, and one count of criminal mischief. The Commonwealth then introduced and the court admitted Exhibit 6, which contained the complaint, criminal information, plea order, and sentencing order in the prosecution of the 2004 episode.

The third prior conviction Trooper Vanvolkenburg testified to stemmed from a 2010 bar fight, during which Appellee struck the victim in the face. The Commonwealth charged Appellee with simple assault, harassment, and disorderly conduct. Appellee later entered a guilty plea to one count each of simple assault and disorderly conduct. After Trooper Vanvolkenburg's testimony, the Commonwealth introduced and the court admitted Exhibit 7, which contained, *inter alia*, the following documents in the criminal case

arising from the 2010 episode: complaint, criminal information, plea order, and sentencing order. At trial, Appellee failed to object to Trooper Vanvolkenburg's testimony regarding all three prior convictions and the court's admission of Exhibits 5, 6, and 7 into evidence.

Next, Tonya Butler testified. Ms. Butler is an emergency room nurse who treated Victims 1 and 2 following the altercation with Appellee. Ms. Butler stated Victim 1 appeared to have memory loss as a result of the fight, because he repeatedly asked for the whereabouts of his wife, Victim 2. Ms. Butler also stated that Victim 1 suffered a broken nose, a concussion, and contusions on the side of his head and face.

Dr. Waldemar Szczupak, the emergency room doctor who treated Victims 1 and 2, testified as an expert in emergency medicine, specifically relating to the treatment of assault victims. Dr. Szczupak stated Victim 1 presented at the hospital with a nasal fracture, swelling on his face and head from contusions, and a serious concussion. Dr. Szczupak characterized Victim 1's injuries from the altercation as severe.

Appellee also testified at trial. Appellee stated that when he left the bar, he saw Ms. Snyder and Victim 2 arguing. Appellee said he watched Victim 2 raise a beer bottle in a manner indicating she was going to hit Ms. Snyder with the bottle. Appellee explained Ms. Snyder "took [Victim 2] to the ground" and began hitting her. Appellee testified Victim 1 then jumped on Ms. Snyder's back, which prompted Appellee to yell at Victim 1 to get off Ms. Snyder. When

Victim 1 did not comply, Appellee struck Victim 1 in the head. Appellee testified Victim 1 subsequently grabbed Ms. Snyder again, and Appellee again told Victim 1 to let Ms. Snyder go. Appellee struck Victim 1 in the head a second time, when Victim 1 failed to comply. Appellee stated when the same pattern of events occurred a third time, he kicked Victim 1 once in the head, and left the premises with Ms. Snyder. Appellee explained he struck Victim 1 merely to protect Ms. Snyder.

During cross-examination, the Commonwealth attempted to elicit testimony from Appellee regarding his prior criminal cases. Before Appellee responded, the court interjected and called for a side bar. Following the side bar discussion, the court stated on the record: "Strangely [Appellee's counsel] is not objecting, but I would believe that it is improper and laying ground for PCRA to have, retry these cases that were in the past. They came in without objection…, I'm just expressing a concern about possible serious errors on the part of the record." (N.T. Trial, 5/8/14, at 103-04). After further side-bar discussion, the Commonwealth changed the line of questioning and moved on.

Finally, Ms. Snyder testified. Ms. Snyder stated Victim 1 did not physically interact with her during the altercation.

On May 8, 2014, the jury convicted Appellee of one count each of aggravated assault and simple assault. That same day, the court convicted Appellee of harassment, a summary offense. The court sentenced Appellee on June 10, 2014, to an aggregate term of seventy-two (72) to one-hundred-

fifty (150) months' incarceration. This Court affirmed the judgment of sentence on May 22, 2015. *See Commonwealth v. Grover*, No. 1708 WDA 2014, unpublished memorandum (Pa.Super. filed May 22, 2015). Appellee sought no further direct review.

On May 20, 2016, Appellee timely filed his first *pro se* PCRA petition. In his petition, Appellee alleged trial counsel was ineffective for, *inter alia*, failing to object to: Trooper Vanvolkenburg's testimony regarding Appellee's prior criminal cases; and the Commonwealth's presentation of Exhibits 5, 6, and 7 as evidence. The PCRA court appointed counsel, who subsequently filed an amended PCRA petition on September 6, 2016. The PCRA court conducted an evidentiary hearing on May 1, 2017. On August 10, 2017, the PCRA court granted Appellee relief, vacated the judgment of sentence, and ordered a new trial. The Commonwealth filed a timely notice of appeal on August 28, 2017. The PCRA court ordered the Commonwealth on August 31, 2017, to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); the Commonwealth timely complied on September 12, 2017.

The Commonwealth raises the following issues for our review:

> DID THE PCRA COURT COMMIT AN ERROR OF LAW WHEN IT CONCLUDED THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE TESTIMONY OF THE INVESTIGATING OFFICER ON THE BASIS THAT THE OFFICER HAD NO PERSONAL KNOWLEDGE OF [APPELLEE]'S PRIOR CONVICTIONS DESPITE TESTIMONY FROM THE OFFICER THAT HE WAS FAMILIAR WITH THE PREVIOUS CASES AGAINST [APPELLEE]?
>
> DID THE PCRA COURT COMMIT AN ERROR OF LAW WHEN

IT CONCLUDED THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO EXHIBITS THAT PERTAINED TO [APPELLEE]'S PRIOR CONVICTIONS FOR ASSAULTIVE BEHAVIOR WHERE THE SUPERIOR COURT HAD ALREADY RULED THAT THE "TRIAL COURT PROPERLY ADMITTED" THE SAME IN ITS OPINION OF MAY 22, 2015[?]

DID THE PCRA COURT COMMIT AN ERROR OF LAW WHEN IT CONCLUDED THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO [APPELLEE]'S PRIOR CONVICTIONS OF ASSAULTIVE BEHAVIOR, THEREBY FINDING PREJUDICE TO [APPELLEE], WHERE: (A.) THE EVIDENCE WAS PROPERLY ADMITTED UNDER PA.R.E. 404(A)(2) AND 404(B)(2); (B.) THE JURY WAS ADVISED OF THE OFFENSES TO WHICH [APPELLEE] PLED GUILTY; (C.) THE TRIAL COURT GAVE AN APPROPRIATE LIMITING INSTRUCTION; AND (D.) FAILURE TO OBJECT WAS HARMLESS ERROR IN LIGHT OF THE OVERWHELMING EVIDENCE OF [APPELLEE]'S GUILT?

(Commonwealth's Brief at 2).

In its issues combined, the Commonwealth argues Trooper Vanvolkenburg's testimony regarding Appellee's prior criminal cases was admissible under Pa.R.E. 404(a)(2), 404(b)(2), and 602, and the court gave the jury a sufficient limiting instruction regarding those prior cases. The Commonwealth submits Appellee did not suffer undue prejudice from the admission of the prior bad acts evidence to call the verdict into question. The Commonwealth posits that even if the evidence of Appellee's prior criminal cases was improperly admitted, trial counsel's failure to object does not constitute ineffective assistance, where admission of the evidence was harmless error in light of the overwhelming properly admitted evidence of Appellee's guilt. The Commonwealth concludes this Court should reverse the

PCRA court's order vacating the judgment of sentence and granting Appellee a new trial. We agree.

Our standard of review of the grant or denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. **Commonwealth v. Conway**, 14 A.3d 101, 109 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513, 515 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. **Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa.Super. 2012).

The law presumes counsel has rendered effective assistance. **Commonwealth v. Williams**, 597 Pa. 109, 950 A.2d 294 (2008). Under the traditional analysis, to prevail on a claim of ineffective assistance of counsel, a petitioner bears the burden to prove his claims by a preponderance of the evidence. **Commonwealth v. Turetsky**, 925 A.2d 876 (Pa.Super. 2007), *appeal denied*, 596 Pa. 707, 940 A.2d 365 (2007). The petitioner must demonstrate: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for the asserted action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. ***Id. See also***

*Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326 (1999).

The actual prejudice required under *Strickland/Pierce*[2] is a higher standard than the harmless error analysis typically applied to allegations of trial court errors. *Commonwealth v. Gribble*, 580 Pa. 647, 676, 863 A.2d 455, 472 (2004).

> Prejudice is established when [a defendant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [*Kimball, supra*], we held that a criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Commonwealth v. Chambers*, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (internal citations and quotation marks omitted). In other words, the "actual prejudice" standard is, as a general and practical matter, a more exacting standard, when litigated through the lens of counsel ineffectiveness, which makes it more difficult for the defendant to prevail. *Gribble, supra* at 676, 863 A.2d at 472. Under the *Pierce* prejudice standard, the petitioner must show that counsel's conduct had an actual adverse influence on the outcome of the proceedings because, in a collateral attack, we "presume counsel is

---

[2] *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, ____ (1984); *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994).

effective, and that not every error by counsel can or will result in a constitutional violation of a defendant's Sixth Amendment right to counsel." *Commonwealth v. Howard*, 538 Pa. 86, 100, 645 A.2d 1300, 1307 (1994).

In determining prejudice in the context of ineffective assistance of counsel, a court "must consider the totality of the evidence before the judge or jury." *Commonwealth v. Simmons*, 569 Pa. 405, 430, 804 A.2d 625, 640 (2001). "If it is clear that the prejudice prong cannot be met, the claim may be dismissed on that basis alone and there is no need to examine the other two prongs." *Commonwealth v. Arroyo*, 555 Pa. 125, 144, 723 A.2d 162, 171 (1999). *See also Commonwealth v. Steele*, 599 Pa. 341, 360, 961 A.2d 786, 797 (2008) (stating: "Where it is clear that a petitioner has failed to meet any of the three, distinct prongs of the [ineffective assistance of counsel] test, the claim may be disposed of on that basis alone, without a determination of whether the other two prongs have been met").

Instantly, the jury heard testimony from several other witnesses who described Appellee's assault on Victim 1. Both Victim 2 and Mr. Huff explained Appellee punched and kicked Victim 1. Victim 2 also stated Appellee continued to attack Victim 1 after he fell unconscious. Mr. Huff added Appellee knocked Victim 1 to the ground and kicked Victim 1 in the upper body while Victim 1 assumed a defensive posture. Trooper Mincer, the responding officer, explained he interviewed eyewitnesses to the altercation and identified Appellee and Ms. Snyder as suspects. Dr. Szczupak, who treated Victim 1

after the fight, testified Victim 1's injuries were severe and consistent with repeated blows to the head. Notably, Appellee conceded he struck Victim 1 several times during the altercation. Appellee testified he did not start the fight, but he did hit Victim 1 because Victim 1 had allegedly attacked Ms. Snyder. Ms. Snyder, however, unequivocally testified that Victim 1 made no physical contact with her throughout the ordeal.

Viewing the prejudice question under the proper standard, the totality of admissible evidence overwhelmingly demonstrated Appellee's guilt, notwithstanding trial counsel's failure to object to Appellee's prior bad acts. *See Chambers, supra*; *Simmons, supra*. Given the strength of the Commonwealth's evidence as a whole against Appellee, we conclude Appellee failed to satisfy his burden to prove trial counsel's omission had an actual adverse effect on the jury's verdict, to warrant a new trial. *See Chambers, supra*; *Gribble, supra*. Based on the foregoing, Appellee's claim of ineffective assistance of counsel fails. *See Arroyo, supra*. Accordingly, we vacate the PCRA court's order granting Appellee a new trial and reinstate the judgment of sentence.

Order vacated; judgment of sentence reinstated.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  1/7/2019