645 A.2d 1300

COMMONWEALTH of Pennsylvania, Appellee,

v.

Melvin HOWARD, Appellant.

Supreme Court of Pennsylvania.

Argued Dec. 7, 1993.

Decided Aug. 8, 1994.

Janis Smarro, for Melvin Howard.

Catherine Marshall, Hugh J. Burns, for Com.

Robert A. Graci, for Atty. Gen.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

The Appellant, Melvin Howard, was convicted of first degree murder[1] and possession of an instrument of crime[2] in connection with the stabbing death of Clarence Woodlock and was sentenced to death.[3] This is an automatic direct appeal from that sentence.[4] For the reasons we discuss below we affirm the judgment of sentence imposed by the Court of Common Pleas of Philadelphia County, Criminal Division.

In all cases where we affirm the judgment of sentence of death, this Court must conduct an independent review of the sufficiency of the evidence on the charge of murder of the first degree without regard to whether the Appellant had challenged his conviction on that ground. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26–27 n. 3, 454 A.2d 937, 942 n. 3

1. 18 Pa.C.S. § 2502(a).

2. 18 Pa.C.S. § 907.

3. A sentence of guilt without further penalty was imposed for the violation of 18 Pa.C.S. § 907.

4. 42 Pa.C.S. §§ 722(4), 9711(h)(1); Pa.R.A.P. 702(b).

(1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). The test for determining sufficiency is whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all the elements beyond a reasonable doubt. *Commonwealth v. Rhodes,* 510 Pa. 537, 510 A.2d 1217 (1986). Based on our review, the Commonwealth clearly meets this test.

The facts of the incident resulting in the death of Clarence Woodlock as established at trial are as follows. Shortly after midnight on September 27, 1987, Appellant was involved in an altercation with two men, one of whom was the decedent, at the intersection of 52nd and Market Streets in Philadelphia. Appellant called out for help, and four men came to the scene and chased the decedent and the other man away. Shortly thereafter, the decedent returned with a piece of wood, which he swung at Appellant. Appellant then pulled out a knife. The decedent and the other man took off in different directions. Appellant, along with three or four other men, pursued the decedent, who threw his piece of wood at Appellant but missed. Appellant continued to chase the decedent until the decedent fell, and as he started to get up Appellant punched him and knocked him to the ground. Appellant began to stab the decedent repeatedly, at one point using both hands to plunge the knife into decedent's chest. Appellant then left the scene, fled to Georgia where his mother lived, and was eventually arrested there. The knife was not recovered.

Appellant was tried before a jury. The Commonwealth's witnesses included an eyewitness who testified as to the events. Additionally, the investigating and arresting officers testified, as did the assistant medical examiner for the city and county of Philadelphia who testified that the decedent's body contained 16 wounds consistent with those caused by a knife. Appellant did not testify, and the only witness presented by the defense was trial counsel's assistant who testified that Appellant was right-handed.

The jury returned the guilty verdicts, and at the penalty phase determined that there was one aggravating circumstance [5] and no mitigating circumstances. Thus, the sentence of death was returned.

Through appellate counsel, Appellant asserts various issues of trial error and ineffective assistance of counsel before this court with respect to the verdicts of guilt. These issues were raised in post-trial motions, and all were found to be meritless.

## I. Error of the Trial Court

 First, Appellant argues that the trial court erred in permitting the Commonwealth to introduce evidence of a statement by Appellant at the time of arrest which incorporated "other crimes" evidence. The arresting officer testified that when Appellant was arrested in Georgia, Appellant asked the police what he was being arrested for. "For murder," he was told. Appellant then replied, "Which one?" Appellant alleges that this statement creates the inference that Appellant was referring to more than one murder that he had committed, that this was therefore evidence of prior crimes, and that such evidence is typically inadmissible absent a specific exception.

Appellant's argument is erroneous. Appellant's contention that this evidence referred to other murders committed by Appellant and that the jury would so interpret it that way is not a reasonable implication. In fact, it was only *defense* counsel that drew this conclusion in his closing argument, when he made a joke out of the idea that the Appellant may have committed so many murders that he had to inquire which among them he was being arrested for. The context in which this testimony was elicited would not create the inference that Appellant suggests. The response "Which one?" was an attempt by the Appellant to determine with whose murder he was being charged. The Commonwealth was clearly attempting to establish that Appellant had knowledge of the murder

5. 42 Pa.C.S. § 9711(d)(9) (the defendant has a significant history of prior felony convictions involving the use or threat of violence to the person.)

of Clarence Woodlock when he made this statement, and that an innocent person would not have such knowledge. Therefore, there is simply no prior crimes evidence here.

■ Appellant also contends that the trial court erred when it ruled that Appellant could not offer evidence that he was right-handed—specifically, by signing his name for the jury to see—without being subject to cross-examination. Appellant argues that this ruling forced him to decline his name-writing demonstration and instead offer the testimony of counsel's assistant. Appellant fervently argues that such demonstration should not be subject to cross-examination. Regardless of the merit of that contention, we fail to see how Appellant could have been harmed by the court's ruling. Whether Appellant was right- or left-handed was of dubious relevance since according to the medical examiner who testified, handedness could not be definitively determined by knife wounds. Moreover, the testimony of the eyewitness indicated that Appellant used *both* hands while stabbing decedent. Finally, Appellant was in fact able to enter evidence as to his handedness; we cannot see how his demonstration would have been that much more probative than the assistant's testimony so that his being precluded from presenting it would rise to the level of error requiring a new trial. *See Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978) (error is harmless if evidence is so overwhelming and prejudicial effect of the error is so insignificant that it is clear beyond a reasonable doubt that the error is harmless).

## II. Ineffective Assistance of Counsel

■ Appellant raises several arguments alleging ineffective assistance of trial counsel. In order for Appellant to prevail on each claim of ineffective assistance of counsel, he must show (1) the underlying claim is of arguable merit; (2) the particular course of conduct of counsel did not have some reasonable basis designed to effectuate his interests; and (3) counsel's ineffectiveness prejudiced him. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

▊▊▊▊▊

▊▊ Appellant first argues that his trial counsel was ineffective for not objecting to the introduction of Appellant's statement "Which one?" However, we note that trial counsel did seek an *in limine* ruling from the trial court to exclude these statements; that motion was denied. Moreover, as discussed above, Appellant had no basis to have these statements excluded. Trial counsel cannot be held to be ineffective for failing to take futile actions or to raise a meritless claim. *Commonwealth v. Rashed*, 496 Pa. 26, 436 A.2d 134 (1981); *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknes*, 491 Pa. 215, 420 A.2d 419 (1980).

▊▊ Appellant next contends that trial counsel was ineffective when he failed to object, move for a mistrial or request a cautionary instruction following introduction of evidence of Appellant's post-arrest silence. During the testimony of the arresting officer, the following exchange occurred:

BY THE PROSECUTOR

Q: Now, did he say anything else to you about him being down there [in Georgia]?

A. No, sir.

Q. How about before he said, "Which one," did he say anything abut how long you had seen him down there?

A. The only oral statement he made to me were, you know, "Why you just arresting me now? You seen me before now."

Additionally, during the closing argument, the prosecutor stated:

Mr. Alva [Appellant's trial counsel] gets up here and says, the defendant says a lot of things. Well, who, me, what, where, when, how? I didn't do that. Is that what you heard the defendant said [sic] when the officer arrested him? Or what it real clear what he said? Which one? You're here, I got you, we have a murder warrant. Which one. You decide what that means, ladies and gentlemen.

Appellant's ineffectiveness argument must fail because there is no merit to the underlying claim. Here, the prosecu-

tor is *not* remarking on the defendant's post-arrest silence. Rather, the evidence and argument presented concerned Appellant's post-arrest *statements. See Commonwealth v. Jermyn,* 516 Pa. 460, 533 A.2d 74 (1987). The context of the testimony elicited does not indicate that the prosecutor was attempting to create an inference that defendant's unresponsiveness at the time of the arrest meant he was guilty; rather, as noted above, the Commonwealth was attempting to establish that Appellant had knowledge of the murder of the decedent, and that an innocent person would not have such knowledge.

Appellant's third allegation of ineffective assistance of counsel relates to trial counsel's failure to request a cautionary instruction concerning a photograph of the Appellant. During examination of the eyewitness, a photograph of the Appellant was shown to the witness for identification purposes rather than having the witness identify Appellant by name because the witness only knew Appellant by his nickname, "Q," or "Sin Q." This photograph was never shown to the jury and was not admitted into evidence. On cross-examination, defense counsel showed the witness a photograph of another man, who was known as "QB," and referred to such photograph as a "mug shot." Apparently, trial counsel's strategy was to imply that the eyewitness may have confused Appellant with this man known as "QB." The photograph of QB was not shown to the jury, nor was it admitted into evidence.

During jury deliberations, the jury sent a request to the judge to view the "mug shots" of Appellant and QB. This request was denied. The next day, trial counsel requested a cautionary instruction with respect to the jury's reference to the picture of Appellant being a "mug shot"; however, the jury returned with a verdict before the instruction could be given.

Appellant now argues that the jury's conclusion that Appellant's photograph was a "mug shot" demanded a cautionary instruction because the jury must have inferred prior criminal conduct by Appellant, and counsel's failure to timely

request such an instruction was ineffective assistance. *See Commonwealth v. Brown,* 511 Pa. 155, 512 A.2d 596 (1986) (plurality opinion) (may be error where mug shots were actually given to jury). This argument, however, is incorrect. Even if Appellant could show that there was some arguable merit to this claim, and trial counsel had no reasonable basis for failing to timely request a cautionary instruction, Appellant cannot show prejudice here. The fact that the jury wanted to see both pictures indicated that counsel may have created a question in the jurors' minds that another man may have been responsible for the murder. However, this question did not rise to the level of reasonable doubt, as evidenced by the verdict.

Additionally, Appellant must show that, absent the alleged ineffectiveness of counsel, the result in his case would have been different. *Commonwealth v. Edmiston,* 535 Pa. 210, 634 A.2d 1078 (1993); *Pierce, supra.* Based on these facts, we cannot conclude that the jury's verdict was the result of any inference of prior criminal conduct by Appellant and that the result in this case would have been different had the jury been cautioned not to make such an inference.

Appellant next argues that trial counsel was ineffective when he failed to timely request that the jury be instructed that no adverse inference could be drawn from the defendant's failure to testify (the "no-adverse-inference charge").[6] At the completion of the trial, the trial judge instructed the jury, but did not include the no-adverse-inference charge, and court was adjourned for the day. After the adjournment, trial counsel realized that he had not asked for the no-adverse-inference instruction. Early the next morning, trial counsel requested the court stenographer to check her notes and

---

6. The no-adverse-inference charge as included in the Pennsylvania Suggested Criminal Jury Instructions is as follows:

3.10A (Crim) *DEFENDANT'S FAILURE TO TESTIFY NOT EVIDENCE OF GUILT*

It is entirely up to the defendant in every criminal trial whether or not to testify. He has an absolute right founded on the Constitution to remain silent. You must not draw any inference of guilt from the fact that the defendant did not testify.

determine if the charge had in fact been given. After determining that it had not, trial counsel approached the trial judge and requested the instruction. The trial judge stated that he would be in the courtroom between 11:30 a.m. and 12:00 noon and would give the instruction then. The trial judge expressed the opinion that he did not believe the jury would reach a verdict before then. This did not prove to be the case, however, and the jury returned with the guilty verdicts before the instruction could be given.[7]

■ First, we find merit in Appellant's underlying claim that he was denied his constitutional rights in violation of Article I, Section 9 of the Pennsylvania Constitution [8] and that such violation does not constitute harmless error. This Court, in *Commonwealth v. Lewis,* 528 Pa. 440, 598 A.2d 975 (1991), recognized that a failure to instruct the jury that no adverse inference could be drawn from the accused's failure to testify could never be harmless error when such instruction is timely requested. Although Appellant's trial was conducted before *Lewis* was decided by this Court,[9] this Court in *Lewis* noted that its holding was consistent with *Carter v. Kentucky,* 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981), in which the United States Supreme Court held unequivocally that the Fifth Amendment of the United Stated Constitution encompasses a right to a "no-adverse-inference" jury instruction when a criminal defendant makes a timely request to the trial court. Although the *Carter* court did not reach the question

7. These facts were stipulated to for the record by defense counsel, the prosecutor and the trial judge after the reading of the verdicts.

8. Article I, Section 9 provides as follows:

Sec. 9. Rights of accused in criminal prosecutions
In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face-to-face, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty, or property, unless by the judgment of his peers of the law of the land.

9. The *Lewis* case was, however, presented to the trial judge on post-trial motions.

of whether the failure to give the instruction could never be harmless error, the general principles on which *Lewis* was based were enunciated in *Carter* and were readily available to trial counsel and the trial court.[10] Therefore, Appellant's claim is of arguable merit.

The Commonwealth here argues that the trial court gave the jury a clear no-adverse-inference charge during *voir dire.* In *Lewis,* this Court rejected a similar argument when the jury was given various instructions during *voir dire,* none of which specifically stated that no adverse inference could be drawn from the defendant's failure to testify. This Court refused to recognize an indirect, piecemeal approach to charging the jury. In *Lewis,* this Court stated:

> Having determined in this Commonwealth that a "no-adverse-inference" charge is necessary to secure the guarantees of Article I, section 9, the judge has either given the charge or he has not. Make-shift substitutes will not suffice. Juries must be told in no uncertain terms that no adverse inference may be drawn from a defendant's failure to take the stand; otherwise, we are left to mere guesswork as to the meaning juries have ascribed to tangentially related words of the court.

*Lewis,* 528 Pa. at 450, 598 A.2d at 980.

The record here indicates that the jurors were specifically told during *voir dire* that if the defendant failed to present evidence or take the stand in his defense, that could not be held against him; however, such charge was not repeated at the end of the trial when the jury was given its final instructions. Although in *Lewis* no clear statement of the no-adverse-inference charge was given at all, we believe that the reasoning in *Lewis* applies equally to this situation— where the jury *is* given the no-adverse-inference charge but only during *voir dire*—and hold that the no-adverse-inference

10. Although we note that as a general rule counsel cannot be found ineffective for failing to anticipate changes in the law, *see e.g., Commonwealth v. Johnson,* 516 Pa. 407, 532 A.2d 796 (1987), we emphasize that in this case *Carter* was available to counsel and counsel was in fact aware of the importance of the no-adverse-inference charge, as evidenced by his request, albeit untimely, for the charge.

charge must be given at the time the jury is finally instructed before deliberations. In light of the importance of the no-adverse-inference charge which is "necessary to secure the guarantees" of the Pennsylvania Constitution, *Lewis,* 528 Pa. at 450, 598 A.2d at 980, such charge must be included in the instructions to the jury *at the completion of trial,* if timely requested by the defendant.

■■■■ Second, there was no reasonable basis for trial counsel's course of conduct. Here, trial counsel failed to request the instruction until after the jury had been sent out to deliberate. This request was patently not "timely." It is quite evident from the record that trial counsel's failure to request the charge in a timely manner was unreasonable. Although as the trial court noted, *not* requesting the no-adverse-inference charge may in certain circumstances be a reasonable course of conduct, *see, e.g., Commonwealth v. Edwards,* 535 Pa. 575, 637 A.2d 259 (1994); *Lewis,* 528 Pa. at 455 n. 14, 598 A.2d at 983 n. 14; this argument is irrelevant to the facts here, where trial counsel did ask for the charge, but in an untimely manner. It is true, as the trial judge also noted, that the reasonableness of counsel's actions must be viewed from an objective standard established by the record, not a subjective one. However, the trial court's conclusion that trial counsel was reasonable from an objective stand-point—that is, that it was counsel's strategy *not* to ask for the no-adverse-inference charge, and such strategy is objectively reasonable—cannot stand in light of the detailed record on this point.

■■■■ Finally, Appellant must show that he was preju-diced by trial counsel's actions. As noted above, this Court has held under *Pierce* and its progeny that a defendant is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it "could have reasonably had an adverse effect on the outcome of the proceedings." *Pierce,* 515 Pa. at 162, 527 A.2d at 977. This standard is different from the harmless error analysis that is typically applied when determining whether the trial court

100

erred in taking or failing to take certain action. The harmless error standard, as set forth by this Court in *Commonwealth v. Story*, 476 Pa. at 409, 383 A.2d at 164 (citations omitted), states that "[w]henever there is a *'reasonable* possibility' that an error 'might have contributed to the conviction,' the error is not harmless." This standard, which places the burden on the Commonwealth to show that the error did not contribute to the verdict beyond a reasonable doubt, is a lesser standard than the *Pierce* prejudice standard, which requires the defendant to show that counsel's conduct had an actual adverse effect on the outcome of the proceedings. This distinction appropriately arises from the difference between a direct attack on error occurring at trial and a collateral attack on the stewardship of counsel. In a collateral attack, we first presume that counsel is effective, and that not every error by counsel can or will result in a constitutional violation of a defendant's Sixth Amendment right to counsel. *Pierce, supra.*

Here, Appellant does not specifically identify how he was in fact prejudiced, but appears to simply rely on *Lewis*. *Lewis*, however, in and of itself does not answer the question whether a defendant is *prejudiced* by his or her attorney's failure to request the no-adverse-inference charge. *Lewis* stands for the proposition that it can never be harmless error for the trial court to fail to give the charge if it is timely requested by counsel. However, as discussed above, it is not axiomatic that what can never be harmless error by the trial court equates to ineffective assistance of counsel. Under *Pierce* and its progeny, a defendant is required to show that counsel's ineffectiveness was of such magnitude that the verdict essentially would have been different absent counsel's alleged ineffectiveness. Appellant has not identified to this Court how he was in fact prejudiced. Nor can we discern from an independent review of the record how Appellant was prejudiced. Therefore, because Appellant has failed to meet the third prong of the *Pierce* test, this claim must fail.

Appellant's last claim of ineffective assistance of counsel involves trial counsel's failure to object to a jury instruction on prior inconsistent statements when the instruc-

tion did not inform the jury that it could consider such statements as substantive evidence. This Court has held that prior inconsistent statements may be used as substantive evidence to prove the truth of the matter asserted therein if such prior statements were made under circumstances with an indicia of reliability. *Commonwealth v. Lively*, 530 Pa. 464, 610 A.2d 7 (1992); *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986). *See also Commonwealth v. Blount*, 387 Pa.Super. 603, 564 A.2d 952 (1989). Appellant claims that in the case *sub judice*, the eyewitness testified inconsistently with previous statements that were made under circumstances that would provide such indicia of reliability. However, Appellant has failed to indicate which specific statements were inconsistent and we will not undertake to determine which, if any, of the witness's statements were in fact inconsistent.

In any event, we find that the trial judge's instruction was proper. The instruction did not limit the examination of the witness's prior statements for impeachment purposes only. Because the court did not preclude the jury from considering these statements as substantive evidence, there was no basis for an objection by counsel. *Blount*, 387 Pa.Super. at 612–613, 564 A.2d at 957.

Finally, pursuant to 42 Pa.C.S. § 9711(h)(3), we have the duty to affirm the sentence of death unless we determine that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

After review of this case, we find that the sentence imposed was not the product of passion, prejudice, or any other arbitrary factor. We also find that the evidence supports the jury's finding of the aggravating circumstance specified in 42 Pa.C.S. § 9711(d)(9). The record establishes that at

the time of the trial herein Appellant was convicted in New Jersey of atrocious assault and battery with a knife in 1977 and atrocious assault and battery with a gun in 1978; and was convicted in Pennsylvania of robbery in 1980.

In addition, after reviewing the information compiled by our Administrative Office in accordance with the requirements set forth in *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700, *cert. denied*, 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984), we do not find the sentence imposed upon this defendant to be disproportionate to the sentence imposed upon defendants in similar cases.

Accordingly, we affirm the Judgment of Sentence of Death imposed upon the Appellant, Melvin Howard, by the Court of Common Pleas of Philadelphia County.[11]

Judgment of Sentence affirmed.

LARSEN, J., did not participate in the consideration or decision of this case.

ZAPPALA, J., files a dissenting opinion.

MONTEMURO, Senior Justice, was an appointed Justice of the Court at the time of argument.*

ZAPPALA, Justice, dissenting.

I dissent. I cannot conclude as the majority has that Appellant's counsel was effective in light of the majority's proper analysis that Appellant was denied his constitutional rights in violation of Article 1, Section 9 of the Pennsylvania Constitution. I agree with the majority's analysis that trial counsel acted improperly when he failed to request a "no-adverse inference" jury instruction and that no reasonable basis existed for trial counsel's course of conduct. My dis-

11. The Prothonotary of the Supreme Court is directed to transmit the complete record of the case *sub judice* to the Governor of Pennsylvania. 42 Pa.C.S. § 9711(i).

* MONTEMURO, J., is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket No. 94 R1801, due to the unavailability of LARSEN, see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.

agreement with the majority arises from their conclusion that Appellant failed to establish prejudice and their independent review of the record likewise failed to discern any prejudice.

The burden placed on the Appellant by the majority in this instance is both impossible and absurd and highlights the unfairness of the prejudice element of the *Pierce* standard.[1] The only way Appellant could possibly establish prejudice here would be to re-empanel his jury and depose each member as to the effect Appellant's failure to take the witness stand in his defense had on his/her verdict. If the Appellant's failure to testify was a critical factor in only one juror's mind, then under *Pierce,* the Appellant would have established the required "adverse effect on the outcome of the proceedings" necessary to prove "prejudice." Short of that testimony, Appellant cannot sustain his ineffectiveness claim.

As can be seen by this scenario, Appellant could never establish the required prejudice. As such, I would adhere to my reasoning set forth in my dissent in *Commonwealth v. Pierce,* supra, that if there is no reasonable basis to support trial counsel's action, his action a fortiori was prejudicial to his client. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987), Zappala, J., dissenting.

---

1. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).