J-S66027-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                              : PENNSYLVANIA
                                              :

          v.                              :
                                              :

NIEEM THOMAS                    :
                                              :

           Appellant              : No. 1091 EDA 2018

Appeal from the PCRA Order March 27, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010184-2009

BEFORE: STABILE, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.:              Filed: October 29, 2020

Appellant Nieem Thomas appeals *pro se* from the order denying his first timely Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, petition without a hearing. Appellant argues that the PCRA court erred in dismissing his claims that trial counsel was ineffective when litigating a suppression motion and by failing to (1) request a jury instruction regarding prior inconsistent statements, (2) object to prior bad acts evidence or seeking a cautionary instruction, and (3) call a witness at trial. We affirm.

This Court previously summarized the factual background of Appellant's conviction as follows:

> On July 21, 2009, Cheryl Harrington (Harrington) resided at 1332 South Hicks Street, Philadelphia, PA, and was a mutual friend of [Appellant], aka Falc, and Darryl Pray, aka BJ (the decedent). Harrington testified that at the time of the shooting, she was using drugs and that she occasionally purchased the drugs from the decedent as well as [Appellant]. On the morning of the incident, Harrington purchased crack cocaine from the decedent. As a

result of that sale[, Appellant] told Harrington "tell the guys they can't be coming around her selling no crack and if they don't like it, they got to come see me." Harrington ignored [Appellant] and she then contacted the decedent's friend "Smoke"[1] and arranged to purchase marijuana. Smoke arrived and completed that purchase, and again someone called to Harrington. When Harrington looked out she saw [Appellant's] friend, Jabaar, aka "Bar"[2] (Jabaar), who stated: "Didn't Falc tell you not to be buying no crack off of nobody else? Didn't Falc tell you not to be having anyone come around here selling no crack?" Harrington explained that [the d]ecedent and Smoke sold drugs together at Tasker and Hicks Streets and that was their territory, and that [Appellant] and Jabaar sold drugs together at Hicks and Reed Streets. After Harrington and her friends consumed the drugs, Harrington went to her father's residence, which was located on nearby Carlisle Street. While there, she heard multiple gunshots emanating from Hicks Street; however, she did not go to investigate. On September 11, 2009, Harrington was interviewed by detectives and she identified photographs of the decedent, Jabaar, her friend Pam, and another person who Harrington knew sold crack cocaine with [Appellant].

At the time of the shooting, Rashaun Wright (Wright)[3] was standing outside of 1514 Reed Street engaged in conversation with friends when he heard gunshots, turned[,] and observed [Appellant] standing over the decedent, shooting him. Wright fled into a friend's home and telephoned police. Wright testified that he heard multiple gunshots fired. He stated that the decedent was face down on the ground. He described the gun as being a

---

[1] The Commonwealth identified "Smoke" as Horace Cunningham in its closing argument. N.T., 2/7/11, at 74.

[2] It appears that Jabaar's full name was Jabaar Thomas and that he was Appellant's cousin. *See id.* at 22, 100.

[3] There are different references to Wright's first name as Rashauna and Rashaun and to Wright as "him" or "her" in the record and the parties' briefs. This memorandum uses the spelling "Rashaun" as that spelling appears in the trial transcript. *See* N.T., 2/3/11, at 86. To maintain consistency with our prior decision, this memorandum will use of the pronouns "he" and "his" when referring to Wright.

silver/black colored semiautomatic. Wright was interviewed and positively identified a photograph of [Appellant] as the shooter from a photo array.

Philadelphia Police Officer Shawn Dobbins (Dobbins) testified that on the day of the shooting, she was on routine patrol when she observed Jabaar and Lamar Truit[t[4]] standing beside a silver Chevrolet Monte Carlo, which belonged to [Appellant], double-parked at the corner of Hicks and Reed Streets. A few minutes later, Dobbins received a radio dispatch of gunshots fired at 15th and Reed Streets[,] to which [s]he responded and observed the decedent lying on the ground.

Officer Kurt Myers (Myers) testified that he and his partner, Officer [Ronald] Ginnetti, also responded to the scene of the shooting and, upon arriving, observed the decedent lying face down on the street, unresponsive, in a pool of blood. Myers attempted to pick the decedent up to transport him to the hospital, whereupon Myers observed a firearm lying beneath the decedent's body. He identified the firearm as a .45 caliber Taurus model PT-145, serial number NET-59764. Myers also observed 10 to 15 fired cartridge cases on the ground nearby. Medical personnel arrived very shortly thereafter and attempted to render assistance to the decedent, who was then transported to the hospital.

[Later that same day,] Officer Daniel Farrelly (Farrelly) and his partner, Officer [Charles] Wells (Wells), while traveling the 1400 block of Hicks Street, observed [Appellant] sitting on steps. As the officers stopped their vehicle, [Appellant] looked at the officers, walked in the opposite direction, and fled. Farrelly pursued [Appellant], and during the chase, [Appellant] removed a handgun from his waistband and went into an alley. Farrelly continued to pursue [Appellant] and Wells joined the effort; however, [Appellant] eluded the police officers. They continued to patrol the area, and at approximately 10:00 PM, located a silver Chevrolet Monte Carlo, parked on the 1100 block of nearby Cleveland Street, which car the officers knew to belong to [Appellant]. The officers confirmed that the car was registered to [Appellant], secured it, and it was later impounded. An arrest warrant was issued for [Appellant's] arrest along with a search

---

[4] Although spelled "Truit" in the trial transcripts, Lamar Truitt spelled his name as "Truitt." *See* Aff. Of Lamar Truitt, 4/14/15.

warrant for the 2007 silver Chevy Monte Carlo. Officers recovered from [Appellant's] car a registration card for a 2007 Chevrolet issued to [Appellant] at his address, 1436 South Hicks Street, financial responsibility identification cards in [Appellant's] name, one letter from Philadelphia Traffic Court addressed to [Appellant], 16 green-tinted baggies containing crack cocaine, and a Taurus .40 caliber semiautomatic handgun, Model number PT -140, Serial Number SZ-103041.

*Commonwealth v. Thomas*, 460 EDA 2011, at 1-3 (Pa. Super. filed Oct. 1, 2012) (unpublished mem.) (citation omitted and some formatting altered).

As noted by the PCRA court:

On February 18, 2011, following a jury trial before this [c]ourt, Appellant was found guilty of murder of the first degree, violation of Section 6106 of the Pennsylvania Uniform Firearms Code, possessing instruments of crime, and related offenses. Thereafter, Appellant was sentenced to life imprisonment without parole. On October 01, 2012, the Superior Court affirmed his judgment of sentence in a memorandum opinion. Petition for allowance of appeal to the Supreme Court was denied on April 10, 2013. On October 15, 2013, the United States Supreme Court denied Appellant's petition for writ of certiorari.

PCRA Ct. Op., 9/6/18, at 1 (some capitalization omitted). Robert B. Mozenter, Esq. (trial counsel), represented Appellant in the pre-trial, trial, and direct appeal proceedings in this matter.

Appellant timely filed his *pro se* PCRA petition on October 8, 2014, and he filed an amended *pro se* petition and memorandum of law in March and June of 2015. The PCRA court appointed Lee Mandell, Esq. (PCRA counsel), to represent Appellant. On May 31, 2017, PCRA counsel filed an amended petition asserting that that trial counsel was ineffective for failing to (1) "request a jury instruction which would have permitted the jury to have

considered the testimony of [Rashaun] Wright as substantive evidence," (2) "move to exclude [Pa.R.E.] 404(b) evidence on grounds that it was unfairly prejudicial," and (3) "present the testimony of one Lamar Truitt." Am. PCRA Pet., 5/31/17, at 2-3.

The record indicates that in a *pro se* letter dated June 19, 2017, and forwarded to the PCRA court, Appellant requested that PCRA counsel develop several claims that Appellant raised in his *pro se* PCRA petitions and memorandum of law. The PCRA court ensured that the correspondence was filed of record and took no further action on this correspondence. *Cf.* Pa.R.Crim.P. 576(A)(4).

On December 18, 2017, the Commonwealth filed a motion to dismiss Appellant's counseled amended PCRA petition. Appellant, while still represented by PCRA counsel, sent the PCRA court a *pro se* response to the Commonwealth' motion to dismiss. Of relevance to this appeal, Appellant asserted that the Commonwealth failed to address the suppression claims raised in his *pro se* PCRA petitions. *See Pro Se* Resp. to Mot. to Dismiss, 2/2/18, at 4. However, Appellant did not acknowledge that his counseled amended petition did not raise his *pro se* suppression claims, and Appellant did not allege PCRA counsel's ineffectiveness for not including these claims in the counseled amended PCRA petition. *See id.*

On February 27, 2018, the PCRA court entered a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's PCRA petition. Appellant did not file a *pro*

*se* or counseled response. On March 27, 2018, the PCRA court dismissed Appellant's PCRA petition.

Appellant timely filed a *pro se* notice of appeal.[5] On May 8, 2018, the PCRA court directed Appellant to file and serve a Pa.R.A.P. 1925(b) statement. Appellant timely filed a *pro se* Rule 1925(b) statement. PCRA counsel subsequently filed a separate Rule 1925(b) statement on May 29, 2019.

On July 20, 2018, Appellant filed a *pro se* motion to remove PCRA counsel in this Court, and this Court remanded the matter to the PCRA court for a **Grazier**[6] hearing. The PCRA court filed a Rule 1925(a) opinion addressing the issues raised in Appellant's *pro se* and PCRA counsel's Rule 1925(b) statements. The PCRA court conducted a hearing and determined that Appellant's waiver of his right to counsel was knowing, intelligent, and voluntary.

On April 12, 2019, Appellant filed in this Court a *pro se* motion to remand, arguing that this Court

> should remand a matter back to the trial court when: (1) a *pro se* petitioner presents the court with a claim of error in his PCRA petition but appointed counsel fails to [i]nclude the petitioner['s] claim in his amended PCRA petition, (2) appointed counsel declined to raise the claim on behalf of his client and, (3) the

---

[5] The envelope containing Appellant's *pro se* notice of appeal bore a postage mark dated April 4, 2018. **See Commonwealth v. Chambers**, 35 A.3d 34, 38 (Pa. Super. 2011) (discussing the "prisoner mailbox rule"); **see also Commonwealth v. Williams**, 151 A.3d 621, 624 (Pa. Super. 2016) (discussing notices of appeal filed *pro se* when a defendant is represented by counsel).

[6] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

[PCRA] court failed to address the claims raised in petitioner's *pro se* PCRA Petition.

Appellant Mot. to Remand, 4/12/19, at 4 (unpaginated). This Court denied the motion without prejudice to Appellant's right to raise the issue in his brief. Order, 4/29/19.

Appellant, in his *pro se* brief submitted in this appeal, presents five issues, which we have reordered for our review:

1. Because [Appellant] was not charged with any drug related offenses and the [trial] court was "inclined" to grant [Appellant's] motion to suppress the drug and the . . . gun found in [Appellant's] car once counsel presented the [trial] court with any case law that contained a "similar factual bases", [Appellant's trial counsel] was ineffective for failing to present the [trial] court with ***Commonwealth v. Flaherty***, 583 A.2d 1175 (Pa. Super. 1990).

2. Because the key Commonwealth witness gave conflicted and inconsistent testimony rela[t]ed to important matters[] and jury was able to use that testimony substantive evidence, [Appellant's position] is that [trial] counsel was ineffective for failing to request a jury instruction on that inconsistent testimony.

3. Because [Appellant] was not charged with any drug related offenses; and the jury attention, by way of the Commonwealth's presentation of the drugs, was in large part focused on [whether] or not [Appellant] was involved in drug [activity], [Appellant's position] is that [trial] counsel was ineffective for failing to seek to exclude the 404(b) evidence (drugs) for begin a part of [Appellant's trial].

4. Because [Appellant] was not charged with any drug[ ]related offenses[] and the jury permitted to view photographs of drugs found in [Appellant's] car, [Appellant's trial] counsel was ineffective for failing to request or "accept" the court "offer" to give "any special instruction" related to those drugs

- 7 -

5. Because Lamar Truitt, a defense witness was willing and available to testify at [Appellant's trial, was trial counsel] was ineffective for failing to call Lamar Truitt to testify . . . .

Appellant's Brief at 4-5.

Briefly, Appellant argues that trial counsel was ineffective for (1) failing to challenge an illegal seizure and search of his car; (2) requesting a jury instruction that prior statements made by an eyewitness, Rashaun Wright, constituted substantive evidence; (3) failing to object to the admission of prior bad acts evidence regarding drugs and drug dealing, and (4) rejecting the trial court's offer of a cautionary instruction regarding the prior bad acts evidence. Additionally, Appellant claims that trial counsel was ineffective for failing to call Lamar Truitt to testify that Jabaar Thomas admitted to shooting the decedent.

Because Appellant argues that the PCRA court erred in dismissing his claims of trial counsel's ineffectiveness, the following principles govern our review. This Court's review of the denial of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (citation and quotation marks omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citation omitted).

Courts must presume that a PCRA petitioner's trial counsel was effective. **Commonwealth v. Diaz**, 226 A.3d 995, 1007 (Pa. 2020) (citation omitted). To overcome that presumption, a petitioner

> must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different. A PCRA petitioner must address each of these prongs on appeal. A petitioner's failure to satisfy any prong of this test is fatal to the claim.

**Commonwealth v. Wholaver**, 177 A.3d 136, 144 (Pa. 2018) (citations and quotation marks omitted).

### Failure to Challenge the Seizure and Search of Appellant's Car

Appellant first contends that trial counsel was ineffective when litigating Appellant's motion to suppress the evidence found in his car, a silver 2007 Chevrolet Monte Carlo. By way of background to this claim, Appellant's trial counsel filed a motion to suppress evidence based on a lack of probable cause to search Appellant's vehicle. On February 1, 2011, the trial court denied the motion to suppress following a hearing.

In Appellant's direct appeal, trial counsel challenged the trial court's denial of his motion to suppress, arguing that the affidavit of probable cause was lacking because it failed to show that Appellant's car "was in any way involved in the shooting or the getaway." **Thomas**, 460 EDA 2011, at 5 (quoting Appellant's Brief, 460 EDA 2011, at 17). This Court rejected the

argument and affirmed the trial court's denial of Appellant's motion to suppress. *Id.* at 7-8.

In his initial *pro se* PCRA filings, Appellant raised several arguments focusing on trial counsel's litigation of issues related to the seizure and search of his car. PCRA counsel, however, did not amend or include those claims in Appellant's counseled amended PCRA petition.

Appellant attempted to raise the issues in *pro se* correspondence, as well as a *pro se* response to the Commonwealth's motion to dismiss the counseled amended PCRA petition. Appellant, however, did not preserve the issues in a response to the PCRA court's Rule 907 notice, and he did not allege PCRA counsel's ineffectiveness, request new counsel, or request to proceed *pro se* while the case was pending in the PCRA court.

Nevertheless, while still represented by PCRA counsel, Appellant filed a *pro se* appeal and a *pro se* Rule 1925(b) statement asserting. In his *pro se* Rule 1925(b) statement, Appellant stated: "[Appellant's] position is that [trial] counsel was ineffective for failing to present the [trial court] with *Commonwealth v. Flaherty*[, 588 A.2d 1175 (Pa. Super. 1990)], and *Commonwealth v. Zelasky*, 635 A.2d 630 [(Pa. Super. 1993)]." Appellant's *Pro Se* Rule 1925(b) Statement, 5/23/18, at 1.

The PCRA court did not consider any issue related to suppression until after Appellant filed a *pro se* notice of appeal, when the PCRA court elected to address Appellant's *pro se* Rule 1925(b) statement. In its Rule 1925(a) opinion, the PCRA court rejected Appellant's claim, noting that Appellant

litigated a suppression issue on direct appeal, that Appellant waived his claim, and that Appellant's assertions of ineffectiveness based on *Flaherty* and *Zelasky* were "misplaced." PCRA Ct. Op. at 4-5. The PCRA court concluded that no relief was due on Appellant's ineffective assistance of counsel claim. *Id.* at 5.

On appeal, Appellant maintains that trial counsel should have cited *Flaherty* to support his position that the affidavit of probable cause did not justify the magistrate's issuance of a search warrant. Appellant's Brief at 13. Additionally, Appellant contends that the affidavit of probable cause contained omissions and was misleading. *Id.* at 18. Appellant further argues that the warrantless seizure of his car was unconstitutional and tainted the subsequent search of the vehicle. *Id.* at 15-16. In short, Appellant contends that trial counsel was ineffective for foregoing these meritorious arguments to suppress the evidence of drugs and an unloaded gun in his car. Appellant, however, does not address the issue he raised in his motion to remand, namely, whether he was entitled to have the PCRA court address claims raised in a *pro se* PCRA petition and *pro se* correspondence, when PCRA counsel did not include those claims in his counseled amended petition.

Concerning Appellant's suppression motion challenge, the Commonwealth argues that this Court previously affirmed the trial court's suppression ruling in Appellant's direct appeal and contends that "[t]he PCRA is not an appropriate avenue for [Appellant] to relitigate his meritless challenge of the denial of his motion to suppress." Commonwealth's Brief at

11. The Commonwealth also asserts trial counsel was not ineffective for failing to cite *Flaherty* because "*Flaherty* is inapposite" and would not have changed the outcome of Appellant's motion to suppress. *Id.* at 12. The Commonwealth does not address Appellant's remaining two arguments that (1) the affidavit of probable cause contained omissions or was misleading and (2) the search of Appellant's car was tainted by a warrantless seizure.

Initially, we must consider whether Appellant properly preserved his issues in the PCRA court. Our Supreme Court has held that the rule against hybrid representation does not require a PCRA court to address all issues raised in a *pro se* PCRA petition when appointed counsel files an amended PCRA petition. *Commonwealth v. Pursell*, 724 A.2d 293, 301-02 (Pa. 1999). The *Pursell* Court reasoned:

> This Court in [*Commonwealth v. Ellis*, 626 A.2d 1137 (Pa. 1993)] held that a defendant in a criminal case may not confuse and overburden the courts by filing his own *pro se* briefs at the same time his counsel is filing briefs for him. There is no right to that type of hybrid representation at trial or on appeal, and the decision whether to allow such hybrid representation is within the sound discretion of the trial court.
>
> This Court further explained the *Ellis* decision in *Commonwealth v. Rogers*, [645 A.2d 223 (Pa. 1994)], in which we held that the Superior Court may prohibit the filing of *pro se* briefs by appellants represented by counsel on appeal. In *Rogers*, our decision stated that we may require that appellants remain with counsel through the appeal once counsel has filed a brief because to do otherwise would result in the confusion and overburdening of the court described in *Ellis*.
>
> The rationale of our decisions in *Ellis* and *Rogers* applies equally to PCRA proceedings in the Court of Common Pleas. We will not require courts considering PCRA petitions to struggle through the

- 12 -

> *pro se* filings of defendants when qualified counsel represent those defendants.

***Id.*** at 302.

This Court has further stated that a PCRA petitioner has "an affirmative duty to preserve his claims." ***Commonwealth v. Smith***, 121 A.3d 1049, 1055 (Pa. Super. 2015). The ***Smith*** Court continued:

> Neither the Commonwealth nor the court ha[s] any duty to instruct [an a]ppellant on how to preserve his claims of ineffective assistance of counsel, including PCRA counsel. In the framework of Rule 907 notice, the law makes clear Appellant had to preserve his claims of PCRA counsel's ineffectiveness in a response to the notice.

***Id.*** at 1056 (citations omitted).

Instantly, PCRA counsel did not raise any ineffectiveness claims related to the motion to suppress in the counseled amended petition, nor did Appellant preserve his *pro se* arguments in a response to the PCRA court's Rule 907 notice. ***See Pursell***, 724 A.2d at 301-02; ***Smith***, 121 A.3d at 1055. Therefore, Appellant's arguments are waived because he failed to preserve them in the PCRA court.

### Failure to Request a Jury Instruction Considering Rashaun Wright's Inconsistent Statements

Appellant next contends that the trial counsel should have requested a jury instruction to consider Rashaun Wright's prior inconsistent statements as substantive evidence. Appellant's Brief at 24. Appellant notes that trial counsel "did offer compelling cross examination" and elicited Wright's inconsistent statements. ***Id.*** Appellant asserts: "In that this witness gave

allege[d] eyewitness identification testimony, h[is] ongoing inconsistency throughout the testimony should have been put before the jury as substantive evidence. *Id.* Citing **Commonwealth v. Lively**, 610 A.2d 7 (Pa. 1992), Appellant asserts that he was entitled to the subject jury instruction. *Id.*

The Commonwealth responds that Wright consistently identified Appellant as the individual who shot decedent in a statement to police, at Appellant's preliminary hearing, and at trial. Commonwealth's Brief at 16. The Commonwealth emphasizes that Appellant does not identify any specific inconsistencies in Wright's prior statements and any inconsistencies "that did exist were minor and were extensively explored by trial counsel during cross-examination and his closing argument." *Id.* at 16-17. The Commonwealth adds that the trial court thoroughly instructed the jury on how to consider testimony and identification testimony. *Id.* at 17.

The PCRA court concluded that Appellant's claim with respect to Wright lacked merit because he could not establish that trial counsel's failure to request an instruction lacked a reasonable basis or affected the outcome of trial. PCRA Ct. Op. at 6.

This Court has stated:

> "[a] prior inconsistent statement may be offered not only to impeach a witness, but also as substantive evidence if it meets additional requirements of reliability." **Commonwealth v. Carmody**, 799 A.2d 143, 148 (Pa. Super. 2002) (citing [**Lively**, 610 A.2d at 9-10]; Pa.R.E. 803.1).
>
> > The test is a two-part inquiry: 1) whether the statement is given under reliable circumstances; and 2) whether the declarant is available for cross-examination. With respect

- 14 -

to the first prong, that the statement is given under reliable circumstances, our [S]upreme [C]ourt has deemed reliable only certain statements; among them is a statement that is "reduced to a writing and signed and adopted by the witness." *Lively*, 610 A.2d at 10. Pa.R.E. 803.1(1). With respect to the second prong, cross-examination, the inconsistent statement itself must be the subject of the cross-examination in order to satisfy the test.

*Carmody*, 799 A.2d at 148 (some internal citations and footnote omitted). *See also Lively*, 610 A.2d at 10 (providing prior inconsistent statement is "demonstrably reliable and trustworthy" where statement "had been reduced to a writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness's statements").[fn3]

> [fn3] In *Lively*, three Commonwealth witnesses, following their refusal to implicate the defendant at trial, were confronted with prior inconsistent statements in which they had previously implicated the defendant in the murder of the victim, which was the subject of the prosecution. *Lively*, 610 A.2d at 10. Our Supreme Court found that two of the statements, a memorandum prepared by a police detective which was not a contemporaneous verbatim recording and which was neither signed nor adopted by the witness and a police officer's testimony about the substance of a telephone call with a witness, were improperly admitted. *Id.* at 11. However, the Supreme Court held that a statement of the third witness, made in a signed writing given to the police, was properly admitted. *Id.*

*Commonwealth v. Enix*, 192 A.3d 78, 81-82 & n.3 (Pa. Super. 2018).

In *Commonwealth v. Howard*, 645 A.2d 1300 (Pa. 1994), our Supreme Court considered a claim of ineffective assistance of counsel "involving trial counsel's failure to object to a jury instruction on prior inconsistent statements when the instruction did not inform the jury that it could consider such statements as substantive evidence." *Howard*, 645 A.2d

at 1308. After noting the general rule that prior inconsistent statements could be used as substantive evidence, the Court reasoned:

> [The a]ppellant claims that in the case *sub judice*, the eyewitness testified inconsistently with previous statements that were made under circumstances that would provide such indicia of reliability. However, [the a]ppellant has failed to indicate which specific statements were inconsistent and we will not undertake to determine which, if any, of the witness's statements were in fact inconsistent.
>
> In any event, we find that the trial judge's instruction was proper. The instruction did not limit the examination of the witness's prior statements for impeachment purposes only. Because the court did not preclude the jury from considering these statements as substantive evidence, there was no basis for an objection by counsel.

*Id.*

Instantly, we acknowledge that **Howard** is not identical to the present case because the appellant in **Howard** claimed that his trial counsel should have objected to an instruction given by the trial court. Here, Appellant contends that trial counsel should have requested an instruction regarding prior inconsistent statements. Nevertheless, as in **Howard**, Appellant asserts that Wright's testimony was inconsistent from prior statements, and he makes no effort to identify which portions of Wright's trial testimony and prior statements were inconsistent. **See id.** Moreover, Appellant does not suggest that the trial court's general instruction as to credibility or identification testimony precluded the jury from considering any inconsistencies in Wright's testimony as substantive evidence. **See id.**

Based on this record, we conclude **Howard** is analogous and compels the conclusion that Appellant has not demonstrated arguable merit or prejudice to his claim that trial counsel should have requested a jury instruction regarding the use of prior inconsistent statements. **See id.**; **see also Wholaver**, 177 A.3d at 144. Accordingly, we agree with the PCRA court that Appellant was not entitled to relief on this claim. **See Lawson**, 90 A.3d at 4.

### Failure to Object to Prior Bad Acts Evidence and Request a Cautionary Instruction

In his next two claims, Appellant asserts that trial counsel was ineffective for failing to object to testimony that Appellant was involved in selling drugs and evidence that the police found drugs in his car. Appellant asserts that any relevant purpose for the evidence was outweighed by its prejudicial effect. Appellant's Brief at 25. Additionally, Appellant claims that trial counsel was ineffective for refusing the trial court's offer of a limiting instruction regarding the proper use of the evidence regarding drugs. **Id.** at 21.

The Commonwealth responds that Pa.R.E. 404(b) permitted the evidence of Appellant's prior bad acts. Commonwealth's Brief at 13. The Commonwealth notes that the evidence regarding Appellant's involvement with drugs established motive for the shooting and was part of the natural progression of the development of the case. **Id.** Furthermore, the Commonwealth contends that Appellant cannot demonstrate prejudice

warranting a new trial because of Wright's identification of Appellant and the ballistics evidence linking the shell casings at the scene of the shooting to the gun found in Appellant's car. *Id.* at 15.

The PCRA court determined that the evidence linking Appellant with drugs and drug dealing was properly admitted as evidence of motive and as part of the sequence of events that formed part of the natural development of the case. PCRA Ct. Op. at 8-9. The PCRA court also concluded that "the evidence was not unfairly prejudicial to" Appellant. *Id.* In sum, the PCRA court concluded that "[a]ny motion to exclude this evidence would have been denied, therefore trial counsel cannot be found ineffective for failing to file the motion." *Id.* at 8. Neither the PCRA court nor the Commonwealth addressed Appellant's claim that he was entitled to a cautionary instruction on the use of prior bad acts evidence.

With respect to prior bad acts evidence, this Court has noted:

The trial court has discretion over the admissibility of evidence, and we will not disturb such rulings on appeal absent evidence the court abused its discretion. An abuse of discretion is not a mere error in judgment. Rather, "discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record."

Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the

- 18 -

> trial court is obliged to balance the probative value of such evidence against its prejudicial impact.
>
> "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." "All relevant evidence is admissible, except as otherwise provided by law."
>
> Evidence will not be excluded merely because it is harmful to a defendant's case. "The trial court is not required to sanitize the trial to eliminate all unpleasant facts . . . where those facts are relevant to the issues at hand[.]"

*Commonwealth v. Akhmedov*, 216 A.3d 307, 316 (Pa. Super. 2019) (*en banc*) (some citations omitted), *appeal denied*, 224 A.3d 364 (Pa. 2020).

Instantly, the record establishes that shortly before the shooting, the decedent sold crack to Cheryl Harrington. N.T., 2/4/11, at 17. Harrington testified that after the exchange, Appellant approached Harrington and expressed his displeasure at other people selling drugs to her. *Id.* at 18-19. Harrington then arranged a purchase of marijuana through the decedent's friend, "Smoke," who was later identified as Horace Cunningham. *Id.* at 20. Once Harrington and Cunningham made the exchange, Appellant's cousin, Jabaar Thomas, yelled out that Appellant told Harrington to buy drugs from "nobody else." *Id.* at 21. Approximately minutes before the shooting, a police officer saw Jabaar and another of Appellant's companions, Lamar Truitt, standing near Appellant's car, which was double parked a few blocks from the scene of the shooting. N.T., 2/7/11, at 22. Police later found bags of crack cocaine and the .40 caliber Taurus handgun linked to the shooting inside Appellant's car. We conclude that this record supports the PCRA court's

conclusion that evidence of Appellant's links to drugs established motive and a natural development of the case. *See Akhmedov*, 216 A.3d at 316; *Lawson*, 90 A.3d at 4.

Moreover, we note that the main issue at trial was the reliability and accuracy of Wright's identification of Appellant as the individual who shot the decedent. Although the Commonwealth referred to Appellant's involvement with drugs, our review of the record reveals that the Commonwealth did not suggest that Appellant's involvement in drug dealing evidenced a propensity to commit the shooting. In sum, the record supports the PCRA court's conclusion that the evidence of drugs and drug dealing was not unfairly prejudicial. *See Akhmedov*, 216 A.3d at 316; *Lawson*, 90 A.3d at 4.

Based on the foregoing discussion, we agree with the PCRA court's conclusion that there was no merit to Appellant's assertion that the evidence regarding drugs and Appellant's involvement in drug dealing generated unfair prejudice that resulted from the admission of the evidence. *See Wholaver*, 177 A.3d at 144; *Akhmedov*, 216 A.3d at 316. Accordingly, the PCRA court properly dismissed this claim. *See Lawson*, 90 A.3d at 4.

As to Appellant's claim that trial counsel should have accepted the trial court's offer to issue a limiting instruction, we note that this issue was not preserved in Appellant's counseled amended PCRA petition, nor addressed by the PCRA court. Like Appellant's suppression claims discussed above, we are constrained to find this issue waived. *See Pursell*, 724 A.2d at 301-02; *Smith*, 121 A.3d at 1055.

**Failure to Call Lamar Truitt**

In his final claim, Appellant asserts that trial counsel was ineffective for failing to call Lamar Truitt to testify for the defense. By way of background to this claim, Appellant's strategy at trial was, in part, to highlight the inadequacy of the investigation into the shooting of the decedent. During closing arguments, for example, trial counsel asked the jury:

> Did [the decedent] have a gun on him that day? Was [the decedent] a gangster? Were other persons out on that day that didn't come into court and testify? Did Pam come in and testify? Did Jabaar come in and testify? Did [Truitt] come in and testify? Did [Horace Cunningham] come in and testify? Were they questioned that day? Did [Charles Harris] tell you today that he didn't see [Appellant] all day that day, and he did see [the decedent] with a heavyset black man that day. And that after the shooting, he say that man who looked at the body and left. Why didn't the police find out who he was.

N.T., 2/7/11, at 60.

Later, when trial counsel referred to Jabaar in his closing argument, the Commonwealth objected. After the Commonwealth presented its closing argument, the trial court, the Commonwealth, and Appellant's trial counsel had an exchange regarding the availability of witnesses including Jabaar, Truitt, and Cunningham. During that exchange, the Commonwealth identified Cunningham as "Smoke," the individual who sold marijuana to Harrington, and who Harrington referred to as the decedent's friend. *See id.* at 98. The Commonwealth stated that Jabaar and Cunningham were dead, and that Truitt was in jail for killing Cunningham. *Id.* at 98, 101. The Commonwealth,

- 21 -

however, did not indicate that it was in possession of any prison phone calls between Appellant and Truitt.

Subsequently, PCRA counsel included Appellant's claim that trial counsel should have called Truitt to testify at trial in Appellant's amended counseled petition. PCRA counsel attached a statement by Truitt dated April 14, 2015, to the counseled amended petition.[7] In that statement, Truitt wrote and indicated that he and Jabaar drove Appellant's car to Hicks Street to meet Appellant, but the decedent told them that Appellant left. Aff. of Lamar Truitt, 4/14/15, at 1. According to Truitt, he left the scene to make "a solo run." *Id.* However, Jabaar called him fifteen minutes later to pick him up at Hicks Street. *Id.* Truitt stated that Jabaar reported that the decedent tried to "shake him down" and "pulled a gun" on him, but that Jabaar "beat [the decedent] to the draw and shot [the decedent] several times." *Id.* at 2. Truitt reported that Jabaar placed a gun in Appellant's car and he parked the car on Cleveland Street. *Id.* Truitt stated that he informed Appellant's trial counsel of this information and the fact that he was willing to testify at Appellant's trial. *Id.*

The Commonwealth filed a motion to dismiss, asserting in part, that in 2012, Truitt was convicted for killing Cunningham, who was at the scene of

---

[7] Although PCRA counsel's amended petition referred to Truitt's statement as an exhibit, Truitt's statement was not included in the record transmitted to this Court. However, a copy of the statement is included as an attachment to Appellant's brief and is consistent with the respective arguments raised by PCRA counsel in the counseled amended PCRA petition and by the Commonwealth in its the motion to dismiss the petition.

the shooting of the decedent. Commonwealth's Mot. to Dismiss, 12/18/17, at 17, n.11. The Commonwealth added that at Truitt's trial, it established through the tapes of prison phone calls between Appellant and Truitt that Truitt killed Cunningham "to silence him as a witness to [Appellant's] killing of [the decedent.]" *Id.*

The Commonwealth argued that trial counsel had a reasonable basis not to call Truitt. Specifically, the Commonwealth asserted that had trial counsel done so, he would have opened the door to the use of the prison tapes during cross-examination, as well as the examination on the circumstances of Cunningham's death. *Id.* at 19-20. The Commonwealth continued that Appellant could not show that the absence of Truitt's proposed testimony was prejudicial in light of the overwhelming evidence of Appellant's guilt. *Id.* at 21-22.

The PCRA court dismissed this issue based on the Commonwealth's representations regarding Truitt's motive for killing Cunningham and the existence of the tapes of prison phone calls between Truitt and Appellant. PCRA Ct. Op. at 10. The PCRA court concluded that trial counsel "had an objectively reasonable basis for not calling Lamar Truitt to testify, and Appellant was not prejudiced in counsel's failure to present him as a witness." *Id.*

On appeal, Appellant asserts that Truitt was ready and available to testify and that trial counsel lacked any reason to call him. Appellant's Brief at 27. According to Appellant, Truitt's testimony implicating Jabaar would

have created reasonable doubt as to the identity of the individual who shot the decedent.  *Id.*

The Commonwealth maintains that the PCRA court properly concluded that trial counsel had a reasonable basis for not calling Truitt. Commonwealth's Brief at 18.  The Commonwealth emphasizes the evidence of Truitt's involvement in the killing of Cunningham, as well as the existence of tapes of the prison phone calls.  *Id.*

As our Supreme Court has stated:

> To establish that counsel was ineffective for failing to call a witness, [a petitioner] must demonstrate that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.  Failure to call a witness is not *per se* ineffective assistance of counsel, for such a decision implicates matters of trial strategy.

*Commonwealth v. Washington*, 927 A.2d 586, 599 (Pa. 2007) (citations omitted).  The petitioner bears the burden of establishing that trial counsel had no reasonable basis for declining to call a witness.  *Id.*

Following our review, we agree with the PCRA court and the Commonwealth that calling Truitt would have been a problematic trial strategy.  Although it is unclear what information trial counsel possessed regarding Truitt at the time of Appellant's trial, trial counsel's strategy of attempting to establish reasonable doubt based on an inadequate investigation was clear.  By calling Truitt, trial counsel could have opened the

door to potentially prejudicial evidence, including the allegations that Truitt was an associate of Appellant's and had killed Cunningham, who was at the scene of the shooting. Accordingly, we agree with the PCRA court that the record demonstrated that trial counsel had a reasonable basis for not calling Truitt. *See Lawson*, 90 A.3d at 4; *see generally Commonwealth v. Stewart*, 84 A3d 701, 707 (Pa. Super. 2013) (noting that "[c]ounsel's decisions will be considered reasonable if they effectuated his client's interests").

Additionally, based on the testimony presented at trial, Appellant has not established that Truitt's testimony would have altered the outcome of trial. As noted above, Wright consistently and unequivocally identified Appellant as the individual who he saw shoot the decedent. Moreover, Truitt's testimony that he left Jabaar in the area of the shooting for approximately fifteen minutes was directly contradicted by testimony that a police officer saw Truitt and Jabaar standing near Appellant's car only two or three minutes before receiving a radio call about the shooting. Based on this record, we discern no basis to conclude that the absence of Truitt's proposed testimony was so prejudicial as to have denied Appellant a fair trial. *See Washington*, 927 A.2d at 599.

For these reasons, we affirm the PCRA court's decision to dismiss Appellant's claim that trial counsel should have called Jabaar as a defense witness. *See Lawson*, 90 A.3d at 4. Appellant has not shown that trial counsel lacked a reasonable basis for declining to call Truitt or that the

absence of the testimony of the witness was so prejudicial as to have him a fair trial. **See Washington**, 927 A.2d at 599. Therefore, no relief is due.

## Conclusion

In sum, for the reasons set forth above, we find that Appellant failed to preserve his *pro se* PCRA claims that trial counsel was ineffective in litigating the suppression of evidence recovered in Appellant's car, and that trial counsel should have requested a cautionary instruction on prior bad acts evidence. We further find that the PCRA court's dismissal of Appellant's claims that trial counsel was ineffective for failing to request a jury instruction regarding Rashaun Wright's testimony, for failing to object to the admission of prior bad acts evidence, and for failing to call Lamar Truitt was supported by the record and the relevant law. Accordingly, we affirm the denial of Appellant's counseled amended PCRA petition without hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/20